## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | **Crim. Action No. 02-085 (JGP)** |
| ) | |
| **v.** ) | |
| ) | |
| **RICKEY BUCHANAN,** ) | |
| ) | |
| **Defendant/Petitioner.** ) | |
| ) | |

## MEMORANDUM & OPINION

### INTRODUCTION

Petitioner Rickey Buchanan moves to vacate, set aside, or correct his sentence pursurant to 28 U.S.C. § 2255.  Mr. Buchanan claims that (1) he is serving an illegal sentence in light of the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005); (2) the government breached its plea agreement with him; and (3) he was denied his Sixth Amendment right to effective assistance of counsel.  The Court finds no merit to his first two claims.[1]  However, because Mr. Buchanan has raised an issue regarding the effectiveness of his trial counsel which cannot be adequately addressed on the present record, the Court will hold an evidentiary hearing on the matter before issuing a final ruling.  In all other respects, the motion is denied.

---

[1] First, Mr. Buchanan is not serving an illegal sentence because the *Booker* decision was announced after Mr. Buchanan's conviction became final and does not apply retroactively. Second, the government did not breach its plea agreement with Mr. Buchanan because there is no credible evidence that it made verbal promises to Mr. Buchanan that were not included in the written plea agreements.

1

## BACKGROUND

On August 24, 2001, the government filed a criminal information charging the Petitioner, Rickey Buchanan, with one count of Bank Fraud, in violation of 18 U.S.C. § 1344, in criminal case number 01-299. On September 5, 2001, Mr. Buchanan pled guilty to Bank Fraud pursuant to a written plea agreement that was filed with the Court, and the Court released Mr. Buchanan on personal recognizance pending his sentencing. On February 19, 2002, before Mr. Buchanan had been sentenced in case number 01-299, the government filed a new criminal information charging Mr. Buchanan with another count of Bank Fraud, in violation of 18 U.S.C. § 1344. In this information, criminal case number 02-085, the government alleged that Mr. Buchanan and other individuals had attempted to obtain fraudulent loans from Sun Trust Bank totaling more than $30,000. On March 11, 2002, Mr. Buchanan pled guilty to the additional charge of Bank Fraud pursurant to a second written plea agreement that was filed with the Court. Mr. Buchanan was again released on personal recognizance pending sentencing. In March 2004, in accordance with his written plea agreement, Mr. Buchanan testified at the sentencing hearing in another criminal case. Based on his testimony, and previous cooperation in a government investigation, the government filed a consolidated motion for downward departure.

On August 9, 2004, the government filed a motion to revoke Mr. Buchanan's conditions of release and to hold him without bond pending sentencing. The government sought to revoke bond because Mr. Buchanan was arrested while assisting another individual purchase a Jaguar automobile[2]

---

[2] Mr. Buchanan later explained that he was helping his friend trade-in a 2004 model year Hummer H2 for a Jaguar. *See* Tr. Sen. Hr'g before Judge John Garrett Penn, Sept. 21, 2004, at 15-18. According to the government, the dealership became suspicious of the pair when it discovered that there was an outstanding arrest warrant for Mr. Buchanan's friend, and the Hummer H2 was reported stolen in Pennsylvania, having been purchased using false

in Maryland.[3]  At the time of his arrest, Mr. Buchanan was in possession (and presented to the arresting officers) a fraudulent driver's license.  The government filed a second sentencing memorandum on August 12, 2004.  The Court held a hearing on the government's motion on August 25, 2004.  At the hearing, defense counsel did not contest the government's claim that Mr. Buchanan was, at the time of his arrest at the Maryland Jaguar dealership, in possession of an identification card for "Roger Buchanan."  Indeed, defense counsel candidly conceded that "Roger Buchanan" was in fact Mr. Buchanan's alias, which he had possessed for ten years and used to make consumer purchases.  *See* Tr. Mots. Hr'g before Judge John Garrett Penn, Aug. 25, 2004, at 32-34.  At the close of the hearing, the Court found that Mr. Buchanan had violated the conditions of his release and concluded that he should be held without bond pending his sentencing.  *Id*. at 43.  The government filed a third sentencing memorandum shortly after.

Mr. Buchanan's sentencing hearing was held on September 21, 2004.  At the hearing, Mr. Buchanan explained in greater detail why he possessed a false identification card for "Roger Buchanan."  He stated that his personal credit was "messed up," and that he kept, as a substitute, an "actual real driver's license" for "Roger David Buchanan" for "probably a little over ten years."  *See* Tr. Sen. Hr'g before Judge John Garrett Penn, Sept. 21, 2004, at 12-13.  While he did not use the false identification to "harm" anyone or to "borrow money from a bank," he did use it to complete

---

identification.  *See* Tr. Mots. Hr'g before Judge John Garrett Penn, Aug. 25, 2004, at 26-27.

[3] The charges against Mr. Buchanan stemming from his arrest in Maryland were, according to defense counsel, ultimately dropped.  *See* Tr. Mots. Hr'g before Judge John Garrett Penn, Aug. 25, 2004, at 33.  However, Mr. Buchanan then filed a civil suit, in the name of his alias "Roger Buchanan," against the automobile dealership.  It was not until Mr. Buchanan filed this civil suit that the Maryland dealership discovered that "Roger Buchanan" was in fact Mr. Buchanan.  *Id.*

large, non-routine consumer transactions, such as buying a house and a car, that involved taking out personal lines of credit. *Id*. at 12.  Apparently, this fictitious "Roger Buchanan" individual would be extended consumer credit where Mr. Buchanan would not.   In regards to the Jaguar dealership, Mr. Buchanan explained that he was carrying the "Roger Buchanan" identification card at the time he was arrested because his actual license was expired.  *Id*. at 14 ("I had that [Roger Buchanan] ID on me at that time.  I should have had Rickey Buchanan on, but I didn't have it.  It was expired. My license had expired, the Rickey Buchanan, I didn't have it on me so I had the Roger David [Buchanan].").  Mr. Buchanan maintained that he never intended to use his "Roger Buchanan" license at the Jaguar dealership, and that he only went with his friend "because [he was] into cars." *Id*. at 24.

At the conclusion of the sentencing hearing, the Court granted the government's motion for a downward departure and sentenced Mr. Buchanan to 48 months incarceration for each count of Bank Fraud. *See* Tr. Sen. Hr'g before Judge John Garrett Penn, Sept. 21, 2004, at 35, 40.  The sentences were to run concurrent with each other. *Id*. at 45.  Mr. Buchanan was also sentenced to serve a three-year period of supervised release following his incarceration and ordered to pay restitution in the amount of $101,518. *Id*.  Mr. Buchanan did not file an appeal.

Following the Court's sentencing of Mr. Buchanan in September 2004, the United States Supreme Court issued its opinion in *United States v. Booker*, 543 U.S. 220, 226-27, 125 S. Ct. 738, 746 (2005). Applying the principles articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), the Supreme Court held that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable

doubt." *Booker*, 543 U.S. at 244, 125 S. Ct. at 756. *See also United States v. Draffin*, 2007 U.S. Dist. LEXIS 35692, *3 (D.D.C. 2007) ("On January 12, 2005, the United States Supreme Court held that the Sixth Amendment requires criminal defendants to admit, or juries to determine, all facts used to increase sentences beyond the maximum ranges set in the Sentencing Guidelines (other than prior convictions)."). On April 25, 2005, Mr. Buchanan filed the instant motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, based in large part on the Supreme Court's decision in *Booker*. The government opposes Mr. Buchanan's motion to vacate.[4]

## DISCUSSION

Mr. Buchanan raises three principle claims in his § 2255 motion. First, he claims that he is serving an illegal sentence in light of the Supreme Court's recent decision in *United States v. Booker*. Second, he claims that the government breached its plea agreement with him. Finally, he claims that he was denied his Sixth Amendment right to effective assistance of counsel. The Court will examine each of Mr. Buchanan's claims in order.

**I.**

Mr. Buchanan's primary claim is that he is serving an illegal sentence in light of the Supreme Court's recent decision in *United States v. Booker*. Mr. Buchanan argues that he "is serving a sentence where the [federal Sentencing] Guidelines were assessed in a 'mandatory manner,'" and that this application of the Guidelines "violate[d] [his] Sixth Amendment right." Def.'s Mot. at 5. More specifically, Mr. Buchanan argues that the Court's "downward departure [] was constrained

---

[4] On August 29, 2005, Mr. Buchanan filed a motion to amend his motion to vacate [28]. In this motion to amend, Mr. Buchanan asserts that the Court relied on the wrong version of the federal Sentencing Guidelines. The government has not had an opportunity to respond to this claim.

by the mandatory nature of the guideline regime," *id.* at 18, and that this was constitutionally deficient because "[a]fter *United States v. Booker*, the federal Sentencing Guidelines can only be assessed in an advisory manner.'" *Id*. *Id*. at 18.  The crux of Mr. Buchanan's argument seems to be that it was error for the Court to consider the fact that he was arrested in Maryland in possession of a false identification card for his alias "Roger Buchanan."[5]  He argues that the Court would have imposed a less severe sentence had it not improperly taken this incident into consideration.

Mr. Buchanan's *Booker* claim is foreclosed by the decision in *In re Fashina*.  Very recently, the Court of Appeals for the District of Columbia examined whether the Supreme Court's decision in *Booker* created a new rule of constitutional law that could be applied retroactively to cases on collateral review.  *In re Fashina*, 2007 U.S. App. LEXIS 11091, *2 (D.C. Cir. 2007).  *See also In re Zambrano*, 369 U.S. App. D.C. 119, 433 F.3d 886 (D.C. Cir. 2006).  In *Fashina*, the Court of Appeals flatly held that "*Booker* does not apply retroactively."  *Id*.  *See also United States v. Crawford*, 2007 U.S. Dist. LEXIS 35673, *5 (D.D.C. 2007) ("Our Court of Appeals recently addressed whether *Booker* applies retroactively under *Teague* and joined every other circuit considering the issue in holding that it does not."); *United States v. Draffin*, 2007 U.S. Dist. LEXIS 35692, *5-6 (D.D.C. 2007) (Our Court of Appeals recently addressed whether Booker applies retroactively under *Teague*, and joined every other circuit considering the issue in holding that it does not.").

That the decision in *Booker* does not apply retroactively is important because Mr. Buchanan's

---

[5] *See* Def.'s Mot. at 23 ("The [Defendant] was to receive probation, however he used an alias to test drive a Jaguar at a Jaguar dealer.  There was no intent to defraud in this test drive transaction but the police were called and the [Defendant] gave an alias when he was arrested, with the charges being subsequently dropped. Because of this scenario with the Jaguar Dealer, the district Court departed only 1 level and imposed a sentence of 48 [months].").

conviction became final on October 5, 2004 (when the time expired for filing a notice of appeal from his conviction),[6] which is several months <u>before</u> the Supreme Court issued its decision in *Booker*. Simply put, when Mr. Buchanan was sentenced by the Court in 2004, the federal Sentencing Guidelines were mandatory, not advisory. The Supreme Court's decision in *Booker*, which would make the Sentencing Guidelines advisory, had yet to be announced. This is important, because as the Supreme Court explained in *Teague v. Lane*, a judicial decision announcing a new rule of law applicable to criminal cases is retroactive only if the rule is substantive or a "watershed" procedural rule. 489 U.S. 288, 109 S. Ct. 1060. The Court of Appeals has stated that *Booker* was "neither a substantive rule nor a watershed rule of procedure and therefore is not retroactive." *In re Fashina*, 2007 U.S. App. LEXIS 11091 at *18.[7] Because *Booker* announced a new rule of criminal procedure, and did so after Mr. Buchanan's conviction became final, it does not apply to his case on collateral review. *See Guzman v. United States*, 404 F.3d 139, 144 (2d Cir. 2005) ("*Booker* is not retroactive, *i.e.*, it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that *Booker* issued.").

**II.**

Mr. Buchanan's second claim is that the government breached its plea agreement with him. Mr. Buchanan asserts, for the first time in this motion, that the government made an oral promise that he would receive only three years of probation, and no term of imprisonment, if he performed

---

[6] *See United States v. Jackson*, 2005 U.S. Dist. LEXIS 36128, *4 (D.D.C. 2005) ("If a criminal defendant does not appeal his conviction, the one-year statute of limitations begins to run when the time period for filing an appeal expires.") (citations omitted).

[7] *See also Cirilo-Munoz v. United States*, 404 F.3d 527, 533 (1st Cir. 2005) ("Every other circuit that has considered this issue has agreed that *Booker* does not apply retroactively.") (listing cases).

undercover work as part of another criminal investigation. *See* First Affidavit of Rickey Buchanan, April 18, 2005, at ¶ 2. Mr. Buchanan asserts that after he performed his part of the contract, *i.e*, the undercover work, the government "reneg[ed] on the [verbal] plea agreement" once it had received "the fruits of [his] extensive cooperation." *Id*. at ¶ 2. He states that this verbal agreement "was not revealed" to the Court or made a part of "the record." *Id*. at ¶ 8. The Court finds no merit to Mr. Buchanan's belated claim because it is inconsistent with both the two written plea agreements and Mr. Buchanan's own sworn testimony

As a general rule, "[w]hen a prosecutor secures a plea with a promise, the promise must be fulfilled." *United States v. Jones*, 313 U.S. App. D.C. 128, 131, 58 F.3d 688, 691 (D.C. Cir. 1995) (citing *Santobello v. New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 498 (1971)). "In other words, a plea agreement is a contract." *Id*. (citing *United States v. Pollard*, 295 U.S. App. D.C. 7, 18, 959 F.2d 1011, 1022 (D.C. Cir. 1992)). "As a consequence, courts will look to principles of contract law to determine whether a plea agreement has been breached." *Id*. (citing *United States v. Papaleo*, 853 F.2d 16, 19 (1st Cir. 1988) (other citation omitted)). The Supreme Court has explained that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262, 92 S. Ct. at 498. *See also United States v. Griffin*, 641 F. Supp. 1546, 1549 (D.D.C. 1986)("[I]f the defendant's plea rests in any significant degree on a false promise, so that the false promise can be said to be part of the consideration of the plea agreement, defendant's plea loses its consensual character if such promise is not fulfilled."). Of course, it also follows that "'while the government must be held to the promises it made, it will not be bound to those it did not make. To do otherwise is to strip the bargaining process itself of meaning and content.'" *United States v. Ahn*,

343 U.S. App. D.C. 392, 402, 231 F.3d 26, 36 (D.C. Cir. 2000) (quoting *United States v. Fentress*, 792 F.2d 461, 464 (4th Cir. 1986)). "In the context of plea agreements, the defendant maintains the burden of proving that the agreement has been breached." *Id*. (citation omitted).

If Mr. Buchanan was promised by the government that he would only be sentenced to probation, as he now claims, he would be entitled to relief. *Santobello*, *supra*. On the record before the Court, however, it is plain that the government made no such promise. Mr. Buchanan signed two written plea agreements. The first written plea agreement contained an integration clause that expressly stated that no other agreements or promises existed between the parties. After signing the agreement and being released on his own recognizance, Mr. Buchanan was involved in a second incident of bank fraud. He then entered into a second written plea agreement, which also contained an integration clause that expressly stated that no other agreements or promises existed between the parties, excluding the earlier plea agreement.[8] In addition to an integration clause, each agreement provided that by pleading guilty to Bank Fraud, in violation of 18 U.S.C. § 1344, Mr. Buchanan faced a maximum possible penalty of up to thirty years in jail, and a potential fine of $1,000,000. The agreements also explained that the "sentence to be imposed in this case will be determined solely by the Court," not the government. *See* Govt.'s Opp'n, Ex. 2. By the plain language of the

---

[8] The plea agreement provided in relevant part:

This letter sets forth a plea offer to your client, Rickey Buchanan. This plea offer is separate and apart from the plea offer dated July 18, 2001 and executed by the parties in court on September 5, 2001. This offer is binding only upon the Criminal Division of the United States Attorney's Office for the District of Columbia. There are no other agreements, promises, terms or conditions expressed or implied.

*See* Govt.'s Opp'n, Ex. 2.

written plea agreements, then, Mr. Buchanan was aware that he was facing more than just a probationary sentence and that the ultimate sentence would be imposed by the Court.

"Standing alone, [the two integration] clause[s] would be strong evidence that no implied promises existed--after all, integration clauses establish that the written plea bargain was adopted by the parties as a complete and exclusive statement of the terms of the agreement." *Ahn*, 343 U.S. App. D.C. at 402, 231 F.3d at 36 (quoting *Fentress*, 792 F.2d at 464 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 210 (1981) (internal quotation marks omitted)). Indeed, "an integration clause normally prevents a criminal defendant, who has entered into a plea agreement, from asserting that the government made oral promises to him not contained in the plea agreement itself." *United States v. Hunt*, 205 F.3d 931, 935 (6th Cir. 2000) (citing *Peavy v. United States*, 31 F.3d 1341, 1345 (6th Cir. 1994)). Here, however, the integration clauses do not stand alone. The Court also has Mr. Buchanan's sworn testimony at the plea hearings, where he stated, repeatedly, that the government had not promised him anything other than what was in the written plea agreements. For example, the Court and Mr. Buchanan had the following exchange during the first plea hearing:

**The Court**:   Have any promises been made for your plea in this case? And think carefully before you answer that question.

**Buchanan**:   No, Your Honor.

**The Court**:   None at all?

**Buchanan**:   No.

**The Court**:   Are you sure of that?

**Buchanan**:   Yes, sir.

**The Court**:   Mr. Buchanan, I have received a copy of a letter addressed to your attorney dated July 18, 2001, a letter sent to your attorney by the Assistant United

|              |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                        |
|--------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|              | States Attorney. The letter I have consists of six pages, and it refers to you and this case. Are you familiar with that letter? |
| **Buchanan**: | Yes, Your Honor. |

. . . .

|              |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                        |
|--------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| **The Court**: | It indicates first on page 1, Mr. Buchanan, that you agree to admit you're guilty and to enter a plea of guilty to an Information charging you with bank fraud. It also sets forth that if the court accepts your plea and finds you guilty, that you could face a penalty of up to 30 years in prison and/or a $1,000,000 fine, a $100 special assessment, an order of restitution and any interest or penalties that may become applicable to fines or restitution not timely paid, and a term of supervised release of at least three years and not to exceed five years. Now, is that your understanding of the possible penalty in this case? |
| **Buchanan**: | Yes, Your honor. |

*See* Tr. Hr'g before Judge John Garrett Penn, Sept. 5, 2001, at 14-16. Later on in the plea hearing, the Court again asked Mr. Buchanan if the government had made any other promises to him to induce him to enter the plea agreement. Again, Mr. Buchanan stated that the government had not:

|              |                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                                        |
|--------------|----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| **The Court**: | [And] you further affirm that there had been no additional promises or representations made to you by anyone in connection with this matter. Is that statment correct? |
| **Buchanan**: | Yes, Your Honor. |
| **The Court**: | Mr. Buchanan, if I accept your plea and if I accept this agreement, if at some point later on you feel that the government has made a promise to you that the government is not keeping and you come back to the court to raise that issue, you must understand that the only place the court will look for that promise is in this written agreement. Do you understand that? |
| **Buchanan**: | Yes, Your Honor. |
| **The Court**: | And Mr. Buchanan, if the promise is not contained in that agreement, then I won't consider it. So if there is any agreement that you think the government has made that is not contained in the agreement or any promise that you think |

11

>>they've made or any promise you think that should be contained in the agreement, you must tell me now. Do you understand?
>
>**Buchanan**: Yes, Your Honor.
>
>**The Court**: Are there any promises that are not contained in this agreement?
>
>**Buchanan**: No, sir, Your Honor.

*Id*. at 25. A similar exchange took place during the second plea hearing, where Mr. Buchanan again stated that the government had not made any promises that were not contained in the written plea agreement:

>**The Court**: Mr. Buchanan, are you entering this plea of your own free will?
>
>**Buchanan**: Yes, sir.
>
>**The Court**: Have any promises been brought – have there been any promises made for your plea in this case?
>
>**Buchanan**: No, sir.
>
>. . . .
>
>**The Court**: [The plea agreement] says, "I hereby accept the terms of the plea offer extended by the United States and I acknowledge that it fully sets forth my agreement with the Office of the U.S. Attorney for the District of Columbia. I affirm that there have been no additional promises or representations made to me by anyone in connection with this matter." Is that accurate?
>
>**Buchanan**: Yes, Your Honor.
>
>. . . .
>
>**The Court**: Does this agreement fully set forth your agreement with the government?
>
>**Buchanan**: Yes, sir, Your Honor.

*See* Tr. Hr'g before Judge John Garrett Penn, March 11, 2002, at 16-18, 22-23. In addition to Mr. Buchanan's sworn testimony, the government has submitted three affidavits from the government

prosecutors who handled or participated in Mr. Buchanan's case. All three government attorneys declare that there were no promises made to Mr. Buchanan outside of what was contained in the written plea agreements. *See* Govt.'s Opp'n, Ex. 3-5. Mr. Buchanan's self-serving affidavit, which is contradicted by his many in-court statements, is the only evidence to the contrary. *See United States v. Griffin*, 641 F. Supp. 1546, 1549 (D.D.C. 1986) ("A defendant's conclusory allegations [of false promises] will not overcome assertions of voluntariness made at a plea hearing.") (citation omitted).

In conclusion, the Court finds no merit to Mr. Buchanan's claim that the government made a verbal promise that he would only be sentenced to a term of probation if he pled guilty to bank fraud. The plain language of the signed, written plea agreements, Mr. Buchanan's sworn testimony, and the sworn declarations of the three government prosecutors who handled his case, all demonstrate that no verbal promises were made to Mr. Buchanan to induce his cooperation. *See United States v. West*, 364 U.S. App. D.C. 80, 86, 392 F.3d 450, 456 (D.C. Cir. 2004) ("Inferring [unwritten] promises is virtually foreclosed where, as here, the district court has also conducted a flawless plea proceeding at which the defendant was made fully aware of, and assented to, the important terms of the [plea] agreement."); *Griffin*, 641 F. Supp. at 1549 ("Generally, a plea will not be set aside as involuntary where the defendant is invariably informed that the sentencing decision is solely within the discretion of the court and the defendant states at the plea hearing that no promises other than the plea agreement were made."). Mr. Buchanan has not, in short, met his burden of proving that the government breached any promise; and the government will not be held to a promise it did not make. *Ahn*, 343 U.S. App. D.C. at 402, 231 F.3d at 36.

### III.

Mr. Buchanan's final claim is that he was denied his Sixth Amendment right to effective assistance of counsel. He bases this claim on three separate grounds. First, he argues that his counsel was constitutionally deficient for not objecting to his sentence based on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000), and it its progeny. Second, Mr. Buchanan argues that his trial counsel was ineffective because he failed to object when the Court used the wrong sentencing guidelines. Third, Mr. Buchanan argues that his trial counsel was ineffective because he failed to file a notice of appeal.

### A.

The Sixth Amendment guarantees a defendant in a criminal case the effective assistance of counsel. Ineffective assistance of counsel claims are governed by the familiar test set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984). As the Court of Appeals has "restated the *Strickland* test, to succeed, a defendant 'must prove (1) [his attorney] made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Gwyn*, 481 F.3d 849, 853 (D.C. Cir. 2007) (quoting *United States v. Moore*, 364 U.S. App. D.C. 281, 287, 394 F.3d 925, 931 (D.C. Cir. 2005)). Under the first prong of *Strickland*, Mr. Buchanan "must show that counsel's performance was deficient, falling below 'an objective standard of reasonableness' defined by 'prevailing professional norms.'" *United States v. Askew*, 319 U.S. App. D.C. 2, 7, 88 F.3d 1065, 1070 (D.C. Cir. 1996) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. 2052 at 2064-65). "As to the second element, 'a reasonable probability is a probability sufficient to undermine confidence in the

outcome.'" *Gwyn*, 481 F.3d at 853 (quoting *Moore*, 364 U.S. App. D.C. at 287, 394 F.3d at 931). Based on these principles, the Court will examine each of Mr. Buchanan's three arguments.

**B.**

Mr. Buchanan's first argument is that his counsel was constitutionally deficient for not objecting to his sentence based on the principles articulated in *Apprendi v. New Jersey*. He asserts that any facts that increased his sentence should, under *Apprendi*, *Blakely* and, subsequently, *Booker*, have been presented to a jury. Mr. Buchanan specifically refers to the Court's consideration of his arrest at the Maryland Jaguar dealership for using the false "Roger Buchanan" identification card.

The flaw in Mr. Buchanan's argument, as the government explains in its opposition brief, is that while this fact may not have been presented to a jury, it did not need to be – Mr. Buchanan readily admitted to the fact himself during his sentencing hearing.[9] Mr. Buchanan admitted that he presented a false driver's license to the police when he was arrested at the Jaguar dealership, and that he had possessed (and used) the false identification card for approximately ten years. *See*, *e.g.*, Tr. Sen. Hr'g before Judge John Garrett Penn, Sept. 21, 2004, at 12. If there were any doubts as to the veracity of Mr. Buchanan's admissions at the sentencing hearing, they were certainly erased by the sworn affidavit that he attached in support of this motion. In his affidavit, Mr. Buchanan again admits that he possessed and used a false driver's license for "Roger Buchanan." *See* First Affidavit of Rickey Buchanan, at ¶ 6 ("[Mr. Buchanan] took a test drive of a Jaguar using the name Roger

---

[9] It should be noted that Mr. Buchanan used the false identification card after pleading guilty to both charges of bank fraud. As a result, he did not admit to using the false driver's license during his plea hearings. Rather, he admitted to these facts at the sentencing hearing. Notably, he still does not contest that he presented a false driver's license to the Maryland police officers; he even goes so far as to declare as much in his signed affidavit. This is a unique case, then, where the Defendant is essentially challenging the veracity of a fact relied upon by the sentencing Court, but for which he readily admits the truth.

David Buchanan."). It was precisely because of Mr. Buchanan's admission, that defense counsel stated that he was no longer pursuing a *Blakely* objection. *See* Tr. Sen. Hr'g before Judge John Garrett Penn, Sept. 21, 2004, at 3 ("When I made that [*Blakely*] argument, I didn't have [the] [hearing] transcript in front of me. I've since review it and unfortunately for me it looks like Mr. Buchanan actually <u>verbally admitted</u> to all the things that I was disputing before. So I informed your chambers that I wouldn't be filing a motion [based on *Blakely*] because I didn't have any basis for objecting.") (emphasis added). Defense counsel therefore made a conscious, tactical decision not to pursue a *Blakely* objection in light of Mr. Buchanan's damaging testimony that he used a false identification card. This type of reasoned decision does not constitute ineffective assistance of counsel under the Sixth Amendment.[10] *See United States v. Holton*, 122 F. Supp. 2d 21, 26 (D.D.C. 2000) ("A sound tactical decision by defense counsel with which the defendant later purports to disagree cannot be the basis of an ineffective assistance of counsel claim.") (citations omitted).

### C.

Mr. Buchanan's second argument is that defense counsel was ineffective because he failed to object when the Court relied on the wrong version of the federal Sentencing Guidelines at

---

[10] Even if the Court were to assume, *arguendo*, that Mr. Buchanan did not admit to these facts, his counsel's failure to lodge a *Blakely* objection at the sentencing hearing would not amount to ineffective assistance of counsel. Until the decision in *Booker*, which was not decided until after Mr. Buchanan's sentencing, the federal Sentencing Guidelines remained mandatory. Defense counsel's omission is not objectively unreasonable, as a result, because he cannot be faulted for failing to predict a change in constitutional criminal procedure. *See United States v. Williams*, 374 F. Supp. 2d 173, 175-176 (D.D.C. 2005) (finding no violation of the Sixth Amendment right to counsel despite "counsel's failure to anticipate that the Supreme Court would apply the principles of *Blakely* to the Federal Sentencing Guidelines"); *Thompson v. United States*, 2005 U.S. Dist. LEXIS 13344, *4 (N.D.N.Y. 2005) ("Because the Federal Sentencing Guidelines were not considered unconstitutional at time of petitioner's sentencing and appeal, it could not have been objectively unreasonable for counsel to fail to raise such an objection.").

sentencing. Mr. Buchanan asserts that the Court erroneously sentenced him under the wrong year of the Guidelines, and that this mistake caused him to be exposed to a prison sentence that was 11 months more than it should have been under the appropriate version of the Guidelines. Specifically, Mr. Buchanan argues that he should have been sentenced under the Sentencing Guidelines that were in effect when he committed the first act of bank fraud, which he had completed by July 2001. However, he points out that he was actually sentenced under the Sentencing Guidelines that became effective on November 1, 2001 – after he had committed the offense. This was error, according to Mr. Buchanan, because the 2001 Guidelines increased both the Base Offense Level and the Specific Offense Characteristic under U.S.S.G. §2B1.1(a) & (b)(1)(f) by 2 points and 1 point, respectively, from the 2000 version. This increased his Total Offense Level by 3 points and his possible sentence by 11 months. Mr. Buchanan reasons that the application of the 2001 Sentencing Guidelines, to an offense committed before the relevant effective date, violated the *ex post facto* clause of the United States Constitution. *See* U.S. Const. Art. I, § 9, Cl 3 ("No Bill of Attainder or ex post facto Law shall be passed.").

On its face, Mr. Buchanan's argument suggests that the Court <u>may</u> have applied the wrong sentencing guidelines. Unfortunately, because Mr. Buchanan made this argument for the first time in a motion to amend his § 2255 petition, *see supra* note 4, the government has not had an opportunity to address the substance of his claim. Before considering the issue any further, it is prudent to give the government time to respond. The Court will therefore delay ruling on this issue and will consider it fully at the evidentiary hearing regarding Mr. Buchanan's Sixth Amendment

claim.[11] *See United States v. Gary*, 351 U.S. App. D.C. 380 (D.C. Cir. 2002) ("Sentencing courts are obliged to apply the version of the Guidelines in effect at the time of sentencing, unless doing so would violate the ex post facto clause." (citing 18 U.S.C. § 3553(a)(4)(A); United States Sentencing Guidelines Manual § 1B1.11(a), (b)(1)).

### D.

Mr. Buchanan's third and final argument is that his trial counsel was ineffective because he failed to file a notice of appeal. Mr. Buchanan asserts, in his affidavit, that he "told his attorney that he wanted to appeal his sentence under the theory that he was not satisfied with the sentence that he received, and that there were legal issues that . . . could be challenged on appeal." 2d Buchanan Affidavit, ¶ 1. Despite his request, defense counsel failed to file a timely notice of appeal.[12] The Government concedes that there is not enough evidence on the current record to determine whether Mr. Buchanan ever asked his attorney to file an appeal and that an evidentiary hearing is therefore necessary to resolve this issue. The Court agrees that an evidentiary hearing is needed to determine

---

[11] The government should prepare and file, in advance of the evidentiary hearing, a response to Mr. Buchanan's motion to amend [28], with special focus on his *ex post facto* argument. *See* Def.'s Motion to Amend Grounds To Habeas Corpus Petition [28]. The Government may want to address, first, whether the wrong version of U.S.S.G. was applied here, second, whether a misapplication of the U.S.S.G. in this case would run afoul of the *ex post facto* clause, and third, whether Mr. Buchanan's counsel was ineffective for not raising an objection at the sentencing hearing. *See generally United States v. Safavian*, 461 F. Supp. 2d 76, 81-82 (D.D.C. 2006) (holding "that the use of the 2005 Guidelines Manual," for an offense that "took place in 2003," would "violate the *ex post facto* clause" because it "would retroactively [] increase the base offense level for [the offense]").

[12] The Court advised Mr. Buchanan that in the event he desired to file an appeal, and his counsel was unable or unwilling to do so, he could notify the Court within ten days and the Court would direct that an appeal was filed on his behalf. *See* Tr. Sen. Hr'g before Judge John Garrett Penn, Sept. 21, 2004, at 48. The Court has no record of ever receiving any such request from Mr. Buchanan.

whether defense counsel failed to file a timely notice of appeal contrary to Mr. Buchanan's instructions.  *See Best v. Drew*, 2006 U.S. Dist. LEXIS 48543, *17 (D.D.C. 2006) ("A lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." (citing *United States v. Taylor*, 358 U.S. App. D.C. 59, 63, 339 F.3d 973, 977 (D.C. Cir. 2003)); *Peguero v. United States*, 526 U.S. 23, 28, 119 S. Ct. 961, 965 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to resentencing and to an appeal without showing that his appeal would likely have had merit." (citation omitted)).  The Court will therefore hold an evidentiary hearing on the issue of ineffective assistance of counsel.

## CONCLUSION

Based on the foregoing, Mr. Buchanan's motion is denied, in part.  An evidentiary hearing will be held on Mr. Buchanan's remaining ineffective assistance of counsel claim.  An order accompanying this memorandum will follow.

**DATE: June 18, 2007**                                                       **JOHN GARRETT PENN**
                                                                              **United States District Judge**